IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>       Plaintiff,<br><br>vs.<br><br>CHAD EDWARD BERRY,<br>       Defendant. | No. 4:15-CR-137<br><br>DEFENDANT'S PRELIMINARY BRIEF IN SUPPORT OF COMPASSIONATE RELEASE |

COMES NOW the Defendant, by and through the undersigned, and hereby provides the following memorandum in support of his motion for compassionate release.

## TABLE OF CONTENTS

I.   BACKGROUND ................................................................................................ 2
    A. Federal Offense and Proceedings................................................................ 2
    B. Incarceration and Physical Health ............................................................. 3
    C. Berry's Pursuit of a Sentence Reduction ..................................................... 4

II.  ARGUMENT ..................................................................................................... 6
    A. Ripeness for Consideration .......................................................................... 6
    B. Extraordinary and Compelling Reasons Merit a Reduction ........................ 7
    C. 3553(a) Factors Merit a Reduction ............................................................ 10
    D. Berry's Release Plan .................................................................................. 13

III. CONCLUSION ................................................................................................ 14

Chad Edward Berry is a nonviolent drug offender who has served more than half of his sentence. Since this Court sentenced him in 2016, Mr. Berry's health has deteriorated significantly as the result of tuberculosis, COVID infections, long-COVID, and a consequence of recovery for these chronic illnesses: obesity and the

related complications. The Court should reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

I.     BACKGROUND

A. Federal Offense and Proceedings

On February 23, 2016, Mr. Berry pled guilty to conspiring to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (PSR ¶2). Mr. Berry's base offense level was 32 based on the total weight of actual methamphetamine. (PSR ¶ 22), and a two-offense-level enhancement was added for his possession of firearms during the time that he committed the drug offense. (PSR ¶ 23). Mr. Berry had 9 criminal history points. Although the Presentence Investigation Report concluded that Mr. Berry was a career offender. (PSR ¶ 28), both the Government and Defendant objected and asserted that one of Berry's prior convictions was not a crime of violence per *Johnson v. United States*, 135 S.Ct. (2015). (*See* Government's Objections No. 3 at 34; Defendant's Objection No. 6 at 35). Accordingly, the parties agreed Mr. Berry was a criminal history category IV, leading to a guideline sentencing range of 121-151 months' imprisonment, with a 120-month statutory minimum. (*Id.*)

On May 25, 2016, this Court sentenced Mr. Berry to 132 months' imprisonment and a five-year term of supervised release. (Dkt. 45 at 2-3) The Court adopted the guideline findings from the parties' Sentencing Agreement and fashioned Berry's sentence based upon the "parties agree that [a sentence of 132 months] takes into account all of the relevant factors set forth under 18 U.S.C. §

3553(a), including the advisory sentencing guidelines calculation (as identified in paragraph 3, supra), the nature and circumstances of the offense, the history and characteristics of [Mr. Berry], and other pertinent factors." (Dkt. 40-1 at 2; *see* Dkt. 58 Sent. Tr. at 8-9). Notably, neither party discussed nor did the Court consider or vary Mr. Berry's sentence based on his physical health or condition as of the time of his sentencing. (*See* Dkt. 58 Sent. Tr. at 5-9)

Mr. Berry did not appeal his conviction or sentence, and did not seek any Motion to Vacate under 28 U.S.C. § 2255.

B. Incarceration and Physical Health

Mr. Berry is now 40 years' old and has been in federal custody for more than 80 months. (*See* PSR, pp. 1, 3) Currently, his projected release date is May 29, 2025, but this does not include an anticipated credit-reduction of 24 months. It is possible that Mr. Berry's release date may be as soon as within the 2022 calendar year.[1]

Mr. Berry went to prison as a reasonably healthy man at 5'10" and weighing 220 pounds. (PSR ¶¶ 95). In the years since sentencing, Mr. Berry's health has deteriorated dramatically.[2] First, as a result of physical injury and repeated

---

[1] *See* Defendant's Exhibit A, an email communication received from Berry dated July 10, 2022, and which will be supplemented. Mr. Berry has completed numerous earned time credits (ETCs) during his incarceration. Recently, his pattern score was further reduced to the extent he's deemed "low risk", which is enabling Mr. Berry to submit his ETCs.

[2] This motion relies in part on the medical records obtained by undersigned counsel in furtherance of this proceeding. The undersigned received approximately 1,000 pages of medical records regarding Mr. Berry from the BOP. These records semi-

COVID infections and the effects of long-COVID, Mr. Berry's weight has increased to the point he is now clinically obese, with a BMI of 37.2 (or higher).[3]

Mr. Berry's immune system has previously been compromised by medications given to him to combat his psoriasis.[4] These medications were previously discontinued, but Mr. Berry has very recently re-initiated these immune-suppressant medications to combat his ongoing psoriasis which is no longer responding to light treatment. This further compromises his already weakened immune system.

C. <u>Berry's Pursuits of Sentence Reduction</u>

On April 8, 2020, Mr. Berry submitted a request for compassionate release to the BOP; however, after more than 30 days without response, on June 1, 2020, Mr. Berry filed a *pro se* motion for compassionate release pursuant to the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239-40, which amended 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. 48). The motion was not accompanied by any medical records nor letters of support, nor did it detail any release plan. On June 9, 2020, the Government vehemently resisted Berry's pro se motion, citing the

---

adequately describe Mr. Berry's physical condition(s) as he references in his previous *pro se* motions. However, Mr. Berry's health has further deteriorated since those 2020 motions as described in Defendant's Exhibit B. (*See id.*) Counsel will provide and further explain Mr. Berry's confidential medical records to the Court and Government in his supplemental briefing.
[3] *Id.*
[4] *Id.*

4

patent deficiencies. (Dkt. 49). On June 25, 2020, Mr. Berry, again representing himself, submitted a response to the Government's reply. (Dkt. 51).

On August 11, 2020 and without any request for Mr. Berry to provide any supplemental documentation, the Court denied Mr. Berry's pro se motion. (Dkt. 52). In that order, the Court found Mr. Berry's (then) condition did not amount to extraordinary and compelling justification for compassionate release. (*Id.* at 3). Shortly thereafter, Mr. Berry filed (what would be considered) a motion to reconsider the Court's August 11, 2020 order. (Dkt. 53). The Government again resisted, (Dkt. 54), and the Court denied Berry's second motion. (Dkt. 55). Although the Court referenced its prior finding "[Mr. Berry's] condition [as claimed in his August 11, 2020 motion] did not amount to extraordinary and compelling justification for compassionate release", the Court's order denying Berry's second motion only references an analysis of § 3553(a) factors. (Dkt. 56 at ¶ 2). This is notable, because as outlined in this motion with his completed coursework, Mr. Berry has demonstrated productive, rehabilitative characteristics while incarcerated. Simultaneously, the evidence provided herein and which can be supplemented demonstrate that Mr. Berry is not adequately receiving the needed medical care or other correctional treatment (substance abuse rehabilitation) he can receive if released. (*See* Defendant's Exhibit C)[5]. Consideration of these 3553(a) factors is certainly warranted.

---

[5] Counsel is still awaiting a letter(s) from Kristen Jaenette, a close friend to Mr. Berry's family who has communicated to the undersigned that Mr. Berry has guaranteed, stable employment as well as immediate access to substance abuse

## II.   ARGUMENT

Where "extraordinary and compelling reasons" exist, a district court may "reduce the [defendant's] term of imprisonment." 18 U.S.C. § 3582(c)(1)(A)(i). This includes the power "toreduce but not eliminate a defendant's prison sentence, or end the term of imprisonment." *UnitedStates v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). In deciding whether to grant a reduction, theCourt must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable"and any "applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A).

As a threshold matter, a defendant must first "exhaust" remedies with the BOP, which occurs "at the earlier of either (1) when the prisoner has 'fully exhausted all administrative rightsto appeal a failure of the Bureau of Prisons to bring a motion' on his behalf or (2) 'the lapse of 30days from the receipt of such a request by the warden of the [prisoner's] facility.'" *United Statesv. Houck*, 2 F.4th 1082, 1083-84 (8th Cir. 2021) (quoting § 3582(c)(1)(A)).

### A. <u>Ripeness for Consideration</u>

As reflected above, Mr. Berry previously petitioned the warden for a sentence reduction on April 8, 2022, and more than 30 days passed with no

---

treatment. Ms. Jaenette has communicated that she co-operates the business Well Hung Gutters, and assists with intake at Integrated Treatment Services.

response from the BOP. Accordingly, this Court has the authority to reduce his sentence.

### B. Extraordinary and Compelling Reasons Merit a Reduction

Congress has not defined what constitutes "extraordinary and compelling reasons" to justify a sentence reduction under § 3582(c)(1)(A)(i). Rather, Congress instructed the United States Sentencing Commission (USSC) to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C.

§ 994(t). It also provided that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

USSG § 1B1.13 contains the only policy statement related to compassionate release ever issued by the USSC. *Brooker*, 976 F.3d at 232-33. USSG § 1B1.13 provides guidance that applies "[u]pon motion of the Director of the Bureau of Prisons." USSG § 1B1.13. The commentary contains a nonexclusive list of extraordinary and compelling reasons relating to an individual's medical condition, age, or family circumstances. *Id.* comment. n.1(A)-(C). As one example of a health condition, the commentary describes "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* comment. n.1(A)(ii)(I). The commentary also provides the following catchall basis for compassionate release: "[a]s determined by the Director

7

of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* comment. n.1(D).

Before the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, a district court lacked authority to consider a compassionate release motion unless the BOP filed it. By its terms, the First Step Act aimed at "Increasing the Use and Transparency of Compassionate Release." 132 Stat. at 5239, § 603(b). Consistent with Congressional intent, compassionate release grants have increased exponentially. *See* BOP, First Step Act (last visited Dec. 28, 2021) (stating that 3842 motions for compassionate release have been granted since the First Step Act's enactment).

Since the First Step Act's enactment, the Sentencing Commission has lacked a quorum to amend § 1B1.13, which, again, applies only "[u]pon motion of the Director of the Bureau of Prisons," not to a defendant's motion. Consequently, "[m]any courts . . . have concluded this means the Commission lacks an applicable policy statement regarding when a court can grant compassionate release" on a defendant's motion. *United States v. Brown*, 457 F. Supp. 3d 691, 699 (S.D. Iowa 2020). This includes at least eight courts of appeal. *See United States v. Long*, 997 F.3d 342, 355 (D.C. Cir. 2021) (collecting cases).[5] As relevant here, the Eighth Circuit has held that "[t]he commentary relevant to determining whether [a defendant's] medical conditions are extraordinary and compelling reasons for a

8

sentence reduction is advisory[,] not prohibitive." *United States v. Marcussen*, 15 F.4th 855, 859 (8th Cir. 2021) (citation omitted).

Mr. Berry's medical conditions are extraordinary and compelling reasons to grant compassionate release. His immune-compromised state from medications treating psoriasis, exacerbated by the affects of long-COVID, Berry's deteriorating health conditions are sufficiently serious to warrant a reduction.

Mr. Berry's medical conditions are all the more extraordinary and compelling in light of the ongoing COVID-19 pandemic, which, as of this filing, has killed more than 1,000,000 Americans. [https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last visited July 4, 2022)](https://covid.cdc.gov/covid-data-tracker/#datatracker-home). Although Mr. Berry has previously been repeatedly infected with COVID-19 and is vaccinated, there is early evidence that the current BA 4 and BA 5 variants may evade immunity. *See* [https://www.ecdc.europa.eu/en/covid-19/variants-concern (July, 7, 2022)](https://www.ecdc.europa.eu/en/covid-19/variants-concern). If Mr. Berry were reinfected, he faces another potentially dire outcome due to his severely compromised immune system and obesity—conditions that the CDC has recognized increase the risk of severe illness or death for an individual with COVID-19. [CDC, People with Certain Medical Conditions (last updated Dec. 14, 2021)](#).

Based on the severity of Mr. Berry's medical conditions[6], especially during the COVID-19 pandemic's recent resurgence, the Court should find that extraordinary and compelling reasons support a sentence reduction.

### C. The 3553(a) Factors Support Reducing Berry's Sentence.

A reduction in Mr. Berry's sentence would comport with the sentencing goals under the 18 U.S.C. § 3553(a) factors. The 82 months already served in prison adequately reflect the nature and circumstances and seriousness of Berry's offense, and such prison sentence provides just punishment for the serious crime committed.

A reduction to time-served would afford adequate deterrence to Mr. Berry, who has already served far more time in custody than ever before. As has (and will further) be evidenced, Mr. Berry's prison experience has wreaked havoc with his health and thus changed his life indefinitely. With indefinitely compromised physical health and the support system in place and awaiting his release, Mr. Berry is unlikely to repeat the same behavior. As to general deterrence, any reasonable person would be deterred by the prospect of nearly seven years in prison for a similar offense.

---

[6] As of the drafting and filing of this preliminary brief, Mr. Berry's current medical status is relatively in flux and the most updated medical records are actively being sought. In accordance with prior references, counsel's professional statements herein will be supplemented with Mr. Berry's medical records and/or personal accounts provided to the undersigned.

For similar reasons, a reduction to time-served would "protect the public from further crimes of the defendant." Mr. Berry's productive use of time while incarcerated shows that he is very unlikely to reengage in the distribution of methamphetamine. Based upon the undersigned's investigation, Mr. Berry has gone through extensive self-rehabilitation and minimal disciplinary record in the BOP. Moreover, his physical condition is now so diminished that it reduces Mr. Berry's ability to re-engage in similar conduct.

Despite his deteriorating physical health and previous lack of programming due to COVID-19, Mr. Berry has managed to make productive use of his time since 2016, completing the following, non-exhaustive list of programs:

1. Landscape Management Tech, 10/7/2019—11/9/2020 (200 hours);
2. MSSC[7] Maintenance Training, 6/5/2018—9/13/2018 (102 hours);
3. MSSC Production Process Training, 4/5/2018—6/6/2018 (102 hours);
4. MSSC Quality Training, 1/17/2018—4/5/2018 (105 hours);
5. MSSC Safety Training, 10/17/2018—1/17/2018 (102 hours);
6. Lean Basics, 5/31/2017—6/1/2017 (16 hours);
7. CRC Career Preparation, 9/9/2016—10/25/2016 (12 hours);
8. National Parenting Program, 1/10/2022—2/15/2022; and
9. Seven Habits of Highly Effective People, (13 weeks).

Mr. Berry is currently finishing (or has just finished) the Workkeys program, Victims Impact, and Anger Management. These ETCs can and will be substantiated

---

[7] Manufacturing Skills Standards Counsel (MSSC) is self-described as "a 501(c)3 non-profit, is an industry-led, training, assessment and certification system focused on the core skills and knowledge needed by the nation's front-line production and material handling technicians. The nationwide MSSC System, based upon industry-defined and federally-endorsed standards, offers both entry-level and incumbent workers the opportunity to demonstrate that they have acquired the skills increasingly needed in the technology-intensive jobs of the 21st century." (https://www.msscusa.org/about-mssc/)

in supplemental briefing. At sentencing, the Court recommended Mr. Berry for Residential Drug Abuse Treatment Program (RDAP) but after several years is still being waitlisted.

As previously referenced, Mr. Berry has earned (at least) 24-months of ETCs which, tentatively, accelerates his release date to sometime in the second half of 2023.[8] By factoring in his 24 months' ETCs and an anticipated release date of (no later than) December 31, 2023, Mr. Berry has completed 82 of his approximate 102-month sentence[9], or 80% of his sentence.

Releasing Mr. Berry from prison and allowing him to commence a term of supervised release would allow him to receive "medical care" and "other correctional treatment in the most effective manner." The prison environment is not conducive to controlling infectious disease, and Mr. Berry has repeatedly been infected with COVID-19, and suffers from other extreme ailments. Mr. Berry's chances of reinfection are greater in prison than on supervised release, and he is at extreme risk of severe COVID-19 complications upon reinfection. In their letters of support[10], Mr. Berry's family has pledged to help care for him upon release. (Defendant's Exhibit D).

---

[8] Counsel has received several communications from Mr. Berry, who has been speaking with his Case Manager; and based upon those communications, it is believed that Berry's release from his FCI to a Residential Reentry Center is within the next 12 months of this motion's filing date. (*See* Defendant's Exhibit A).
[9] Imposed sentence of 132 months, less 24 months of ETCs and less another 6 months for Residential Reentry Center.
[10] Counsel is still awaiting a letter(s) from Kristen Jaenette, who has communicated to the undersigned that, through her resources, Mr. Berry has guaranteed, stable employment as well as immediate substance abuse treatment available.

Finally, release from prison would not end Mr. Berry's punishment. The Court imposed a five-year term of supervised release. Alternatively, the Court also has discretion to convert the remainder of Mr. Berry's prison sentence to supervised release. *See* 18 U.S.C. § 3582(c)(1)(A). This would leave Mr. Berry under federal supervision for more than eight years. During Mr. Berry's term of supervised release, any violation could result in a return to prison, which further ensures the protection of the public and deterrence from future criminal conduct.

Accordingly, the § 3553(a) factors support a reduction in Mr. Berry's prison sentence.

### D. Berry's Release Plan

As outlined in Defendant's Exhibit C, Mr. Berry would intend to reside at 1319 S. 6th Ave. E. in Newton, Iowa with his mother JoAnn Oppedal. For the immediate future, the Defendant's sister, Melissa, her boyfriend, Andrew Main, and their two children, Evia and Grayson, will also be residing at this residence as they await' completion of the home they are building.  This extended loving and supportive family unit—none with any serious criminal history—will undoubtedly provide the needed support and structure to assist Mr. Berry reintegrating into society.

Mr. Berry already has employment secured with Job Well Hung Gutters in Newton, Iowa. (*Id.*). The owner is Michael Jaennette, and he can be contacted at 641-521-2675. Finally, Mr. Berry has been accepted into the drug treatment for him at Integrated Treatment Services and/or if his release is granted. (*Id.*)

### III. CONCLUSION

For the reasons explained herein and those in anticipated supplemental reply and briefing, Mr. Berry embodies the type of incarcerated individuals who should receive compassionate release. The Court should exercise its authority under 18 U.S.C. 3582(c)(1)(A)(i) and reduce Mr. Berry's sentence of incarceration to time-served. In the alternative and in anticipation of the Government's resistance to Mr. Berry's request for compassionate release, the Court should enter an order for supplemental briefing.

WHEREFORE, counsel for Defendant Chad Edward Berry respectfully requests the Court either modify Defendant's supervised release condition for the limited purposes stated herein or set a hearing so the parties may further be heard or direct the parties to submit briefs to fully present their respective positions.

                                                Respectfully submitted,

By: *Paul Statler*
Paul J. Statler  AT0012577
STATLER LAW, PLC
301 East Walnut Street, Suite 7
Des Moines, Iowa 50309
Phone: 515.288.0509 Fax: 515.608.4484
Email: paul@statlerlaw.net
ATTORNEY FOR DEFENDANT

Copies to:

U.S. Attorney's Office
Southern District of Iowa
Ph: (515) 473-9317 (office)

Mikaela J. Shotwell
Assistant United States Attorney

U. S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tele: (515) 473-9300
Mikaela.Shotwell@usdoj.gov
ATTORNEYS FOR PLAINTIFF

**PROOF OF SERVICE**

The undersigned certifies that on July 12, 2022 the foregoing instrument was served upon all parties to the above cause by:

| | | |
|---|---|---|
| ( )personal service | ( ) | first class mail |
| ( )certified mail, return receipt requested | ( ) | facsimile |
| ( )Airborne Express (overnight) | (X) | electronic filing |
| | ( ) | e-mail |

I declare that the statements above are true to the best of my information, knowledge and belief.

*/s/ Paul J. Statler*